**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Jared J. FELMLEE, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 7, 2002.
Filed June 20, 2003.
Revised Aug. 18, 2003.

BEFORE: DEL SOLE, P.J.,
McEWEN, P.J.E., HUDOCK, JOYCE,
STEVENS, TODD, KLEIN, BENDER
and GRACI, JJ.

OPINION BY DEL SOLE, P.J.:

¶ 1 This is a direct appeal from the judgment of sentence imposed after Appellant pled guilty to fleeing or attempting to elude a police officer. He was sentenced to serve twelve to twenty-four months' incarceration, plus fines and costs. On appeal he alleges that the trial court abused its discretion in sentencing him within the aggravated range of the sentencing guidelines where the record "overwhelmingly supports a sentence in the standard range." Appellant's Brief at 6. We affirm.

¶ 2 Before considering the merits of Appellant's claim we address the timeliness of this appeal. This discussion is brought about due to our initial review of the record in this matter which appears to

indicate that Appellant's post-sentence motion was filed 13 days after the imposition of sentence, which would make it untimely.[1] However, upon closer examination we conclude that Appellant's motion was timely filed and that the instant appeal is properly before us for review.

¶ 3 After receipt of Appellant's guilty plea the trial court imposed sentence on November 30, 2000. Appellant had until Monday, December 11, 2000, in which to file his post-sentence motion. On that day Appellant's post-sentence motion was received by fax at the clerk of courts' filing office. The record includes the faxed copy which contains a heading bearing the date 12/11/2000. The motion contains a separate page which includes a certification of notice of service. It recites that the motion was "served on all parties or their counsel of record by fax on Monday, December 11, 2000." The motion was not noted on the docket or time stamped until December 13, 2000. That same day the trial court issued a Rule to Show Cause. A hearing was eventually held on January 18, 2001, after which the trial court denied the motion. The notice of appeal was filed within 30 days, on February 16, 2001.

¶ 4 We conclude the motion was timely filed on December 11, 2000, and the notice of appeal was timely filed within 30 days of the entry of the trial court's ruling on the motion. Pa.R.Crim.P. 720(A)(2)(a). Although the motion was not docketed until two days later, it is apparent that the trial court accepted the facsimile, as it issued a Rule to Show Cause and reviewed the

motion at a hearing where neither the court nor the parties commented about its receipt by fax or its timeliness.[2] Finding the post-sentence motion and the appeal in this matter were timely filed, we turn now to address the merits of this appeal.

¶ 5 Appellant, who challenges only the discretionary aspects of his sentence, sets forth in his Brief a separate Concise Statement of the Reasons for Allowance of Appeal in accordance with Pa. R.A.P. 2119(f) and *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987). Therefore, we must determine if Appellant has raised a substantial question that the sentence imposed is not appropriate under the Sentencing Code. *Commonwealth v. Felix*, 372 Pa.Super. 145, 539 A.2d 371 (1988).

¶ 6 Appellant complains that the sentencing court sentenced him in the aggravated range without adequate reason and without giving appropriate consideration to mitigating factors. He further complains that the court did not grant him a thorough review of this claim as set forth in his post-sentence motion and he asks this Court to review the entire record to "assure that this Defendant has been sentenced and treated fairly." Appellant's Brief at 13. Appellant's claim that the court erred by imposing an aggravated range sentence without consideration of mitigating circumstances raises a substantial question. *Commonwealth v. Anderson*, 381 Pa.Super. 1, 552 A.2d 1064 (1988).

1. Only a timely-filed post-sentencing motion will trigger an extension of the time for filing a notice of appeal. Pa.R.Crim.P. 720(A)(2). If indeed Appellant's motion was untimely filed, the notice of appeal subsequently filed after the trial court considered and ruled on Appellant's motion, in excess of 30 days from the original judgment of sentence, would be untimely. Pa.R.Crim.P. 720(A)(3).

2. Rule 576 of the Rules of Criminal Procedure governs filings with the clerk of courts in criminal matters. It neither authorizes nor prohibits filings by facsimile. It remains within the discretion of the trial court to do as it did here, and accept the timely faxed post-sentence motion as filed.

¶ 7 We have conducted a review of Appellant's claim along with the information set forth at the sentencing hearing and post-sentence motion hearing and conclude that the sentence imposed by President Judge White was fair and appropriate.[3] Appellant was convicted of Fleeing or Attempting to Elude Police Officers, 75 Pa.C.S.A. § 3733(a). President Judge White noted the danger created when Appellant was driving a motorcycle, at night, with a light barely attached and carrying a passenger. He ignored both the police lights and sirens and a loudspeaker direction by the police officer to pull over. He veered off into the woods, where the officer chased him, ultimately abandoning the chase because of the risk of hitting trees. President Judge White noted the dangerous nature of this chase saying to Appellant at the sentencing hearing, "[Y]ou endangered yourself, you endangered your passenger, and you certainly endangered the police officer. And then, or course, to run like that, leaving your passenger under the wheel to my way of thinking, that's a cowardly act." N.T., 11/30/00, at 20.

¶ 8 In reviewing Appellant's history, the court noted Appellant was on parole at the time of the offense. The judge discussed Appellant's two juvenile adjudications for burglary and multiple summary offenses, many dealing with reckless conduct with a motor vehicle, placing people in danger as happened in the instant offense. The court also reviewed a presentence report. It did note certain mitigating facts including the fact that Appellant had finished high school, was trying to go to college, and was employed. He balanced these factors but concluded that an aggravated range sentence was warranted because of the dangerous nature of the conduct and Appellant's past criminal history. The court

found that the state sentence it imposed offered Appellant the opportunity to go to boot camp which it believed would serve as a benefit to Appellant.

¶ 9 Therefore, it is obvious that an experienced trial judge very carefully reviewed all the facts and made an intelligent decision as to sentencing. Under any standard, this sentence is appropriate, and we, therefore, affirm.

¶ 10 Judgment of sentence affirmed.

¶ 11 KLEIN, J. files a concurring opinion, joined by McEWEN, P.J.E. and BENDER, J.

CONCURRING OPINION BY KLEIN, J.:

¶ 1 I fully agree with the majority that President Judge William H. White, Jr., an experienced and highly regarded trial judge, made absolutely no error in sentencing but instead considered all the factors and made a reasoned decision as to a proper sentence.

¶ 2 I likewise agree that we have jurisdiction to consider this matter, but for a different reason.

¶ 3 Although it appears the record indicates Felmlee's post-sentence motion was filed 13 days after the imposition of sentence, or three days late, the majority says that upon closer examination "we conclude that the motion was timely filed on December 11, 2000. . ." The majority assumes that President Judge White received a faxed copy of the motion on the tenth day (actually the eleventh, since the tenth day was a Sunday) and used his discretion to "accept the timely faxed post-sentence motion as filed."

¶ 4 Maybe that is what happened. But maybe it is not what happened. It may be

---

**3.** 42 Pa.C.S.A. § 9721(b); *Commonwealth v.* *Kenner,* 784 A.2d 808 (Pa.Super.2001).

that President Judge White received the fax later and decided to consider it *nunc pro tunc* although it was late. Maybe Venango County accepts filing by fax, which probably is a good idea. But maybe it does not. The Venango County Rules posted on the Internet are silent on the subject. We just do not know. We have a faxed motion in the record with a time stamp on it, but that is all.

¶ 5 I have no idea what President Judge White thought in this case. We are not able to read his mind. I believe it is just as likely he knew that the motion was a few days late and neither the district attorney nor he thought it fair to deny Felmlee his right to file a post-sentence motion. The only way to find out whether or not the filing met the ten-day requirement is to remand the case for a hearing. While I would find that President Judge White was within his jurisdiction and treated the motion as filed *nunc pro tunc,* I cannot say whether or not it should be considered filed on December 11.

¶ 6 This is one example of the problems that occur when we, as an appellate court, decide that a time limit for a lower case filing was exceeded or something was waived when **neither the Commonwealth nor the trial court discuss or even raise the issue.** This may be a help to clear out our appellate court docket, but it does not contribute to justice. It may just foster a cottage industry of those dealing with legal malpractice and claims of ineffectiveness of criminal defense counsel. We should remember that our ultimate responsibility is to review what happened in the lower court to see if the parties got a fair trial and the law was followed. It is not our role to be super-technical and avoid facing the issues whenever possible.

¶ 7 As the Pennsylvania Supreme Court instructed us:

This Court's approach to enforcement of procedural rules, whether local or state-wide, is dictated by the facts and circumstances in each individual case. To analyze otherwise would exalt procedural rules, which were created for efficiency and fairness, to a status far beyond their inherent power. "It has been our policy to overlook ... procedural errors when a party has substantially complied with the requirements of the rule and no prejudice would result. 'Procedural rules are not ends in themselves, but means whereby justice, as expressed in legal principles, is administered. They are not to be exalted to the status of substantive objectives.' "

*Feingold v. Southeastern Pa. Transp. Auth.,* 512 Pa. 567, 517 A.2d 1270, 1272 (1986) (citations omitted).

¶ 8 Indeed, another panel of this court has said that "[p]rocedural rules are not jurisdictional limitations, and overlooking a procedural defect does not, in and of itself, alter the jurisdiction of the court." *Commonwealth v. Laskaris,* 385 Pa.Super. 339, 561 A.2d 16, 21 (1989). The *Laskaris* panel drew guidance from the foregoing excerpt from *Feingold* and from *Kurtas v. Kurtas,* 521 Pa. 105, 555 A.2d 804 (1989) (plurality opinion). In *Kurtas,* despite a procedural defect that a party's post-trial motion in a civil case was filed beyond the ten-day period provided by Pa.R.C.P. 227.1, the trial court elected to consider the merits of the issues raised in the motion. The Supreme Court held that the Superior Court erred in refusing to consider the merits of those issues on appeal simply because the post-trial motion had not been filed within ten days.

¶ 9 In this case, it does not matter whether the motion was timely filed, or it was a couple of days late and President Judge White decided to consider it. Justice requires that we address the merits of

Appellant Felmlee's claim. If ever there was a case to entertain a post-sentence motion filed a couple of days late, this is it.

¶ 10 A review of the post-sentence motion demonstrates why President Judge White would have elected to accept and consider the motion *nunc pro tunc*. Counsel documented the difficulties he had trying to contact his client and therefore why the motion may have been late. As noted above, to this date the Commonwealth has never objected to the *nunc pro tunc* treatment of the post-sentence motion.

¶ 11 After the sentence was imposed, Felmlee retained new counsel. Felmlee's new counsel sought to meet with Felmlee to prepare and timely file a post-sentence motion. Counsel's efforts to meet with Felmlee proved to be unsuccessful due to no fault of either counsel or Felmlee. The circumstances are described as follows in the post-sentence motion filed December 13, 2000:

> 2. The Defendant has caused individuals to make contact with new counsel to visit him about this case. Current counsel went to the jail on December 6, 2000 to visit with the Defendant. **Current counsel was told that it was lunch hour and that he could not see the Defendant face-to-face.** Current counsel suggested to be allowed to come to central control to speak with the Defendant through an intercom. This request was granted, however a correctional officer needed to be present so counsel could not hold a confidential conversation with his client.... Current counsel went to the jail on December 8, 2000 to visit, but was told the Defendant had been transported [from the county facility to a state facility in Allegheny County]. [Emphasis in original.]

> 3. Current counsel only knows that the Defendant wanted to file a post-sentence motion for relief. Exactly which of the available remedies the Defendant wanted to request are unknown due to the December 6, 2000 denial of contact and the Defendant be (sic) transported and unavailable on December 8, 2000.

Because this was new counsel, it would be irresponsible to file post-sentence motions without knowing what the complaints were and without ever meeting with his client. Counsel made best efforts to meet with Felmlee, but, through no fault of his own, was unable to do so.

¶ 12 The Commonwealth neither objected to the motion as untimely nor challenged the averments detailing new counsel's difficulties in obtaining a confidential conference with Felmlee to prepare a post-sentence motion. In fact, even in its brief to this Court *en banc* the Commonwealth never argued that the motion was untimely. President Judge White did not refuse to consider the motion based upon its untimeliness. Quite to the contrary, President Judge White issued an order on December 14, 2000 scheduling a hearing on Felmlee's motion. Therefore, it makes sense to acknowledge that all parties recognized that this was an unopposed application to hear the motion *nunc pro tunc.*

¶ 13 I respectfully disagree with the comment made by the majority in a footnote that a trial judge cannot consider a post-sentence motion filed within thirty days of sentencing but beyond the ten-day period. The question of timeliness requires an examination of the relatively new post-sentence procedures set forth in Pa. R.Crim.P. 720 (formerly Rule 1410). The amendments to that rule significantly changed post-sentence procedures in criminal cases, allowing an immediate appeal from a judgment of sentence without first

having to file post-trial motions, thus eliminating post-trial motions practice, and making post-sentence motions optional.

¶ 14 The subsections of Pa.R.Crim.P. 720 critical to this determination are (A)(1), (A)(2)(a), (A)(2)(b), and (B)(3).

¶ 15 Subsection (A)(1) provides that a written post-sentence motion "shall be filed no later than 10 days after imposition of sentence." Subsection (A)(2) provides:

(2) If the defendant files a timely post-sentence motion, the notice of appeal shall be filed:

(a) within 30 days of the entry of the order deciding the motion;

(b) within 30 days of the entry of the order denying the motion by operation of law in cases in which the judge fails to decide the motion . . .

Subsection (B)(3) provides:

(3) Time Limits for Decision on Motion. The judge shall not vacate sentence pending decision on the post-sentence motion, but shall decide the motion as provided in this paragraph.

Subsection (B)(3) further states that unless the judge decides the motion or grants an extension within 120 days of its filing, the motion shall be deemed denied by operation of law. Pa.R.Crim.P. 720(B)(3)(a).

¶ 16 In this case, President Judge White decided the motion well within the time limits provided by the rule. However, as noted, it appears that the initial motion may have been filed three days late. Despite the possible late filing, the Commonwealth made no objection, President Judge White promptly set a rule returnable date on the motion, and the motion was heard on its merits and denied well within the 120–day limit, in fact, within 60 days.

¶ 17 President Judge White, however, obviously looking at the new procedure, did not do what would have been done under the old rule, that is, he did not vacate the sentence. As noted, Pa. R.Crim.P. 720(B)(3) specifically provides, "The judge shall not vacate sentence on the post-sentence motion, but shall decide the motion as provided in this paragraph."

¶ 18 The only way that we might find this appeal untimely is if under Pa. R.Crim.P. 720(A)(2), if a post-sentence motion is *not* timely, none of the other provisions of the act apply, even if the judge (and, in this case, the Commonwealth) is willing to overlook the three days late that the motion is filed and hears the case. I believe this is a hyper-technical reading of the rule that is unjust and unnecessarily deprives the trial judge of appropriate discretion. It is clear that President Judge White would have been well within his rights to vacate the sentence, since although ten days had passed, 30 days had not passed. The fact that he instead merely scheduled a rule returnable date for the Motion should not change matters. Therefore, I believe it appropriate to address the merits of the Motion.

¶ 19 I believe the appropriate reasons that this appeal need not be quashed are the following:

1. The trial court retains jurisdiction for thirty days after sentence. Even if no post-sentence motion is filed, the judge still has jurisdiction for 30 days to vacate the sentence. Late filing of a post-sentence motion is a *procedural* defect, not a *jurisdictional* defect.

2. The post-sentence motion, although not specifically asking for consideration *nunc pro tunc*, documented why the motion was late and *nunc pro tunc* consideration was appropriate. New counsel had entered the case, and was given the runaround at the prison and was unable to

communicate with his client within ten days.

3. The trial court should be deemed to consider a late motion *nunc pro tunc* when the judge schedules a hearing on a post-sentence motion within thirty days of sentence. The case should not turn on whether magic words are used.

4. The new rule directs that the trial judge should *not* vacate the judgment of sentence when considering a post-sentence motion. Once the judge, within 30 days, makes the decision to consider a late-filed post-sentence motion and sets a hearing, the mechanism of the post-sentence rules applies and the judge is directed *not* to vacate the judgment of sentence while considering the motion.

¶ 20 A fuller discussion follows.

### 1. The trial judge retains jurisdiction for thirty days.

¶ 21 The trial court still had jurisdiction over this matter at the time Felmlee's post-sentence motion was filed. Thirty days had not yet passed from the date the sentence was imposed. Even in the absence of a post-sentence motion, the trial court retained jurisdiction over the matter for thirty days after the imposition of sentence. *See* 42 Pa.C.S. § 5505. If, for example, on his own motion, President Judge White had vacated the sentence and either modified it or scheduled a further hearing, he would be within his authority to do so.

¶ 22 Because of the mandate of section 5505, there was no jurisdictional defect in the proceedings before the trial court. Rather, at worst, there was a procedural defect in that Felmlee's post-sentence motion was filed on December 13, 2000 when it should have been filed on or before December 11, 2000.

¶ 23 It is true that in *Commonwealth v. Ledoux*, 768 A.2d 1124 (Pa.Super.2001), we

stated, "[T]he trial court has the *discretion* to treat untimely post trial [sic] motions as if they had not been filed at all." *Id.* at 1125 (emphasis added). However, if a trial court has the discretion to treat an untimely post-sentence motion as if it had *not* been filed at all, it logically follows that a trial court also possesses the discretion to treat an untimely post-trial motion as if it *had* been timely filed. That is exactly what President Judge White did here.

¶ 24 This is not the first time our appellate courts have addressed confusion that results when lawyers and judges try to interpret new rules that are not crystal clear. In *Commonwealth v. Widmer*, 547 Pa. 137, 689 A.2d 211 (1997), the Pennsylvania Supreme Court rejected this court's application of *Commonwealth v. Hodge*, 441 Pa.Super. 653, 658 A.2d 386 (1995). In *Hodge*, we held that if a defendant files a direct appeal without filing post-sentence motions, the challenge to the weight of the evidence cannot be heard. We stated that a defendant who seeks a new trial on grounds that the verdict is against the weight of the evidence must necessarily raise this issue in post-sentence motions. *Id.* at 389. In *Widmer*, the Supreme Court reversed and remanded to the trial court to permit Widmer to file a motion for a new trial *nunc pro tunc*, months after the sentencing. Since the challenge was to the weight of the evidence, there was a need for trial court input, and therefore despite the language in Pa.R.Crim.P. 720 allowing for optional post-sentence motions, the Supreme Court held post-sentence motions *did* have to be filed when there was a challenge to the weight of the evidence. *Widmer*, 689 A.2d at 212.

¶ 25 Therefore, we are hard pressed to hold that President Judge White had no authority to permit the filing of post-sentence motions *nunc pro tunc* when they were at most filed two days late. It is difficult to argue with the concurring opin-

ion of now Chief Justice Cappy in *Widmer*, where he called for the Criminal Rules Committee to revisit Rule 720 (then Rule 1410). While Chief Justice Cappy was concerned about the rule's "clear void" in dealing with issues relating to weight of the evidence claims, it appears there is a good deal more in the rule that needs clarification.

¶ 26 In sum, there was no *jurisdictional* defect in the proceedings before the trial court. Rather, at worst, there was a *procedural* defect in that Felmlee's post-sentence motion was filed late. Such a procedural defect can be overlooked by the trial judge if the judge still has jurisdiction. Here, President Judge White still had jurisdiction and chose to overlook the late filing. We should not trample upon his discretion.

**2. The action of the trial judge shows he was considering the motion *nunc pro tunc*.**

¶ 27 President Judge White did not refuse to consider the motion for its untimeliness. As noted above, there were ample reasons that this motion should have been considered *nunc pro tunc* because of the difficulties counsel had in contacting his client. President Judge White issued an order on December 14, 2000 scheduling a hearing on Felmlee's motion. President Judge White followed the procedure set forth in Pa.R.Crim.P. 1410(B)(2)(b) (now Rule 720(B)(2)(b)) by scheduling a hearing. Therefore, it seems that President Judge White's intention was in effect to grant the filing of the motion *nunc pro tunc* and treat the motion as if it were timely filed.

**3. Under the new procedural rule, if a judge is to consider a post-sentence motion *nunc pro tunc*, the judge is directed to refrain from vacating the judgment.**

¶ 28 President Judge White followed the specific directive of Pa.R.Crim.P. 1410(B)(3) (now Rule 720(B)(3)), which provides:

> The judge shall not vacate sentence pending decision on the post-sentence motion, but shall decide the motion as provided in this paragraph.

¶ 29 The transcript of the January 18, 2001 hearing reflects that the judge, the Commonwealth, and the defendant assumed the motion was being considered *nunc pro tunc*. The entirety of the hearing dealt with the merits of Felmlee's post-sentence motion. There is not even a single mention by either the Commonwealth or President Judge White of any timeliness issue.

¶ 30 President Judge White's ruling on the motion, which he read into the record during the January 18, 2001 hearing, demonstrates that he was denying the motion on its merits. He scheduled the hearing on the motion within thirty days of sentencing. He followed the new procedure, and issued his order on the merits well within 120 days of the date Felmlee's motion was filed, *see* Pa.R.Crim.P. 1410(B)(3)(a) (now Pa.R.Crim.P. 720(B)(3)(a)), and complied with the rule specifying the contents of an order ruling upon a post-sentence motion. *See* Pa.R.Crim.P. 1410(B)(4) (now Pa.R.Crim.P. 720(B)(4)).

¶ 31 Had President Judge White realized there was a chance for a highly technical interpretation of the time requirement for filing a post-sentence motion, he probably would have vacated the judgment. An analysis of what would have been done demonstrates why it makes no sense not to allow him to consider the motion *nunc pro tunc*. First, he would vacate the judgment. Immediately afterwards, he would reinstate the judgment. Then the defendant would have another ten days to file a post-sentence motion,

and then the 120 days would start running again. Common sense dictates that this is not required and this experienced trial judge sensibly addressed the substantive issues before him.

¶ 32 While the majority opinion may be correct that the post-sentence motion *could* have been filed timely, it *could* have been filed late as well. This highlights the problem that occurs when this Court, on its own, finds an issue waived when the parties and the trial Court do not find waiver. We do not know whether or not the Venango County procedures allow or prohibit fax filings. We do not know when a copy of the post-sentence motion got to the Clerk's office—it might have been manually filed on Wednesday, two days after it was faxed. In any event, President Judge White considered the motion within 30 days of sentence. There is no reason we should not as well.

¶ 33 As noted, I agree with the result reached by the majority, although I would not quash the appeal for a different reason. I join the majority in agreeing that the sentence should be affirmed on its merits.