J-S01009-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MISAEL JOSUE MARTINEZ-RIVERA | : | |
| | : | |
| Appellant | : | No. 1193 MDA 2020 |

Appeal from the Judgment of Sentence Entered January 29, 2020
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0001593-2019

BEFORE: LAZARUS, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.: **FILED: APRIL 16, 2021**

Misael Josue Martinez-Rivera appeals from the judgment of sentence, entered in the Court of Common Pleas of Berks County, following a nonjury trial in which he was convicted of three counts of simple assault;[1] two counts each of recklessly endangering another person (REAP),[2] terroristic threats,[3] and harassment;[4] and one count each of possession of an instrument of crime

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2701(a)(1); § 2701(a)(3).

[2] 18 Pa.C.S.A. § 2705.

[3] 18 Pa.C.S.A. § 2706(a)(1).

[4] 18 Pa.C.S.A. § 2709(a)(1).

(PIC)[5] and persons prohibited from possessing a firearm.[6]  After careful review, we affirm.

On September 26, 2019, Martinez-Rivera was in the home of Luz Sanchez Aponte in Reading, Pennsylvania, assisting with housecleaning and other general chores.  Aponte was pregnant with Martinez-Rivera's child, but the two were not in a committed relationship[7] and did not live together.  On that date, Aponte was watching television with four of her minor children via connection to a Microsoft Xbox.  Although the Xbox was normally kept in her son J.R.'s room, because, when left there, it was apparently left turned on at all times, Aponte had moved it to the family room after receiving an excessive electric bill from the utility company.

At approximately 4:30 p.m., Juan Rodriguez, Aponte's adult son, returned to Aponte's home from the grocery store and proceeded up the stairs to the second floor where his bedroom was located.  Rodriguez heard his 17-year-old brother, J.R., leave his own room on the same floor and proceed down the stairs to the first floor where Aponte and her four other children were watching television.  J.R. announced that he was going to bring the Xbox upstairs to his own room, which was met with resistance from his siblings.

---

[5] 18 Pa.C.S.A. § 907(b).

[6] 18 Pa.C.S.A. § 6105(a)(1).

[7] Aponte testified at trial that she and Martinez-Rivera began a romantic relationship, which included living together, in November of 2019, a few weeks after the incident.  N.T. Nonjury Trial, 1/14/20, at 97.

Aponte verbally reprimanded J.R. and, in response, J.R. punched Aponte's pregnant stomach. *See* N.T. Nonjury Trial, 1/14/20, at 86. Martinez-Rivera then admonished J.R., reminding him to treat his mother with respect. *Id.* at 87.

Rodriguez, hearing the commotion, exited his room and proceeded to the top of the stairs. From his vantage point, Rodriguez observed Martinez-Rivera, who was in the middle of the staircase, "tap" or "just touch[]" the back of J.R.'s head with a "metal rod," which was also described at trial as a "little metal beam" or "stick," as he descended the last few stairs. *Id.* at 12-13, 36, 47, 50, 87, and 104. Rodriguez then placed Martinez-Rivera in a headlock or chokehold. *Id.* at 13, 47, 87, and 105. At that point, Martinez-Rivera kicked J.R. in the chest, which caused J.R. to fall down the stairs. *Id.* at 14. J.R. quickly returned up the staircase and continued to scuffle with Martinez-Rivera while Rodriguez fought him from the other side. Aponte testified that she joined the scuffle on the stairs when Rodriguez placed Martinez-Rivera in the chokehold. *Id.* at 84, 87, 104. At some point, J.R. kicked Martinez-Rivera down the stairs, which caused all four individuals to fall down the stairs together; the males continued to fight in the living room. Rodriguez and J.R. were both on top of Martinez-Rivera while he was kicking and thrashing. *Id.* at 15-16. Aponte testified that she was able to avoid injury when everyone fell down the stairs because Martinez-Rivera "went and put his hand [] down to hold me and I f[e]ll onto his hand." *Id.* at 87, 103-04.

At that point, the physical fight ended and Aponte ordered Rodriguez and J.R. to leave her home. Rodriguez and J.R. proceeded back up the stairs towards their bedrooms to pack up their belongings. Shortly thereafter, J.R. entered Rodriguez's bedroom followed by Martinez-Rivera. Martinez-Rivera was holding a black .9mm firearm and "pistol whipped" J.R. in the left upper back, from behind, using the firearm. *Id.* at 16-17, 19. As a result of the strike, J.R. dropped down to the bed, which was on the floor in the middle of the room. Martinez-Rivera brandished the firearm, pointed it at both Rodriguez and J.R., and threatened that he was going to hurt or kill them if they hurt their mother, Aponte. *Id.* at 19, 20, 22, 37. Martinez-Rivera then fired a single shot while holding the firearm in his right hand. The bullet pierced the closet door and then entered the frame of the same closet door that was located on his left-hand side in Rodriguez's bedroom. *Id.* at 20, 23. At trial, Rodriguez testified that J.R. was "in the line of fire" but not "directly" in it, since J.R. was "laying on [] the bed, but the closet's higher." *Id.* at 23.

After Martinez-Rivera fired the shot, he and Rodriguez began arguing, and Martinez-Rivera swung at Rodriguez using the firearm. Rodriguez testified that he was able to grab hold of the weapon, "reverse it," and push Martinez-Rivera out of the room, which caused Martinez-Rivera to fall on top of the television stand on his way out the door. *Id.* at 21-22. Martinez-Rivera continued to possess the firearm after he left Rodriguez's room. *Id.* at 38. Rodriguez then spent fifteen minutes packing his belongings before taking an Uber to a friend's house. *Id.* at 24-25, 42, 49-51. From there, Rodriguez

called his aunt and uncle, recounted what transpired, and showed them his injuries, which included a bruise and abrasion on his forehead. *Id.* at 25. J.R. also sustained scratch-marks to his face, hand, and back. *Id.* at 32. Rodriguez's aunt and uncle called the police and reported the incident.

When police arrived two to three hours later at Rodriguez's friend's house, Rodriguez turned over a spent brass bullet casing that his younger brother had discovered in Rodriguez's bed after Martinez-Rivera fired the shot into the closet and was forced out of the room. *Id.* at 33-34, 66. Police observed and photographed Rodriguez's and J.R.'s physical injuries at the friend's house. *Id.* at 66, 69. Police then proceeded to Aponte's home, where they received her consent to search the property. *Id.* at 70, 75. In Rodriguez's bedroom, police observed broken furniture—evidence of an altercation—and the bullet hole in the door and frame of the closet. *Id.* at 71. Police recovered a bullet fragment lodged in the frame of the door opposite the entry hole, *id.* at 71-72, and discovered "wet" spackle in the "exit wound" hole caused by the bullet. *Id.* at 73, 79. When police questioned Martinez-Rivera at the scene, he confirmed there was an altercation regarding J.R. wanting to take the Xbox upstairs, described Rodriguez and J.R. as misbehaved children, and stated there was pushing, shoving, and that he was placed in a chokehold. *Id.* at 74. When questioned specifically about the firearm, Martinez-Rivera claimed that he never went up the stairs to Rodriguez's bedroom with a gun. *Id.* at 75. Police did not recover any firearm from the home, but did recover a magazine for a weapon from Rodriguez's

bedroom closet, which Rodriguez testified belonged to his now-deceased stepfather who previously stored it in his bedroom. *Id.* at 29-31, 93-94.

On April 26, 2019, Martinez-Rivera was charged with four counts each of aggravated assault,[8] and simple assault; two counts each of REAP, terroristic threats, and harassment; and one count each of PIC, and person prohibited from possessing a firearm. Martinez-Rivera waived his right to a jury trial and the matter proceeded to a bench trial on January 14, 2020. At the conclusion of trial, as noted above, the court found Martinez-Rivera guilty on all counts, except for the four counts of aggravated assault and one count of simple assault that was charged pursuant to subsection 2701(a)(1) of the Crimes Code.[9] On January 29, 2020, the court sentenced Martinez-Rivera to an aggregate sentence of five to seventeen years' incarceration, followed by two years' probation.[10]

On January 31, 2020, Martinez-Rivera's trial counsel, Daniel Nevins, Esquire, filed a petition to withdraw his representation due to Martinez-Rivera's wish to proceed with new counsel on appeal. The court granted the

---

[8] 18 Pa.C.S.A. § 2702(a)(1); § 2702(a)(4).

[9] The court found Martinez-Rivera guilty of committing simple assault on Counts 11, 13, and 14, and found him not guilty on Count 12. Counts 11 and 12 were charged pursuant to subsection 2701(a)(1) and Counts 13 and 14 pursuant to subsection 2701(a)(3).

[10] The court's sentence was imposed as follows: 4 to 15 years' incarceration for his violation of section 6105; 5 years' probation on each count of terroristic threats and PIC; 1 to 2 years' incarceration on each count of REAP; and 2 years' probation on each count of simple assault.

petition to withdraw after a hearing on February 7, 2020 and then appointed the Berks County Public Defender's Office to represent Martinez-Rivera. On February 19, 2020, Martinez-Rivera filed both a counseled request to file a post-sentence motion *nunc pro tunc,* and an untimely motion for post-sentence relief. The court denied both motions on February 21, 2020. Martinez-Rivera filed a timely notice of appeal on February 26, 2020. Both he and the court complied with Pa.R.A.P. 1925. On March 19, 2020, Martinez-Rivera filed a motion in this Court to remand to the trial court to file a post-sentence motion. On July 28, 2020, we granted that motion with instructions for Martinez-Rivera to file post-sentence motions *nunc pro tunc* within ten days of our order.

On September 4, 2020, Martinez-Rivera filed a request to file a *nunc pro tunc* post-sentence motion and contemporaneously filed a motion for post-sentence relief seeking modification of his sentence based on the claim that the court failed to consider his mitigating circumstances. On September 8, 2020, the court granted Martinez-Rivera's request to file a *nunc pro tunc* post-sentence motion and, by separate order, denied the motion seeking modification.

Martinez-Rivera filed a second notice of appeal on September 14, 2020; and he and the court again complied with Rule 1925. The court issued an opinion on October 2, 2020, incorporating its previous April 14, 2020 opinion, and recommending we affirm Martinez-Rivera's judgment of sentence.

On appeal,[11] Martinez-Rivera presents the following issues for our review:

1. Whether the evidence presented at trial was insufficient to support a guilty verdict for simple assault, 18 Pa.[C].[S].A. § 2701(a)(1).

2. Whether the evidence presented at trial was insufficient to support a guilty verdict of simple assault, 18 Pa.[C].[S].A. § 2701(a)(3).

3. Whether the evidence presented at trial was insufficient to support a guilty verdict of [REAP], 18 Pa.[C].[S].A. § 2705.

4. Whether the trial court abused its discretion by imposing a sentence of 5-17 years of imprisonment.

5. Whether the sentence of 4-15 years['] imprisonment for possessing a firearm was illegal.

Appellant's Brief, at 17-18.

Rivera's first three issues challenge the sufficiency of the evidence. Our standard of review for challenges to the sufficiency of the evidence is well-settled:

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to

_____

[11] On September 14, 2020, Martinez-Rivera filed a notice of appeal stating that his appeal is "from the [j]udgment of [s]entence in this matter on January 29, 2020[,] and from the denial of the [p]ost-[s]entence [m]otion **entered in this matter on September 8, 2020**." Notice of Appeal, 9/14/20 (emphasis added). Although dated September 8, 2020, the court's order denying Martinez-Rivera's post-sentence motion was not filed until September 10, 2020. Thus, Martinez-Rivera's appeal properly lies from the January 29, 2020 judgment of sentence, made final by the court's September 10, 2020 denial of his post-sentence motion. **See Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (en banc) (citation omitted) ("In a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions."); **see also Commonwealth v. Chamberlain**, 658 A.2d 395, 397 (Pa. Super. 1995).

the verdict winner[,] giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact[-]finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence[,] coupled with reasonable inferences drawn therefrom[,] overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact[-]finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Rahman*, 75 A.3d 497, 500-01 (Pa. Super. 2013) (internal citations, quotation marks, and brackets omitted). Finally, the trier of fact, while passing upon the credibility of witnesses, is free to believe all, part, or none of the evidence. *Commonwealth v. Fortson*, 165 A.3d 10, 14–15 (Pa. Super. 2017).

Martinez-Rivera first challenges the sufficiency of the evidence to sustain his conviction for simple assault under subsection 2701(a)(1). Martinez-Rivera cites to our decision in *In Interest of J.L.*, 475 A.2d 156 (Pa. Super. 1984), wherein we found that the defendant's intentional elbow strike to her two-year-old nephew did not constitute simple assault where the nephew did not cry out or demonstrate evidence of pain because,

> [w]ithin the confines of the family, it is difficult to attach criminality to the pushing, shoving, slapping, elbowing, hair-pulling, perhaps even punching and kicking, that not infrequently occur between siblings or other members of the same family.
> . . . In the absence of a criminal or malicious intent, such intrafamily spats will not support criminal prosecution.

*Id.* at 157. Martinez-Rivera concludes that the simple assault statute never contemplated his "fatherly tap of reproach" with the metal pole to fall within the ambit of its proscribed criminal conduct. Appellant's Brief, at 40-41. Moreover, Martinez-Rivera argues that any act he committed on the stairs after Rodriguez placed him in a headlock or chokehold was "warrantable self-defense." *Id.* We agree with this analysis; nevertheless, for the reasons stated below, we affirm Martinez-Rivera's conviction under subsection 2701(a)(1) because the Commonwealth proved beyond a reasonable doubt that Martinez-Rivera "pistol whipped" J.R. on his back, under circumstances demonstrating his intent to cause J.R. bodily injury or substantial pain.

Under subsection 2701(a)(1), a person is guilty of simple assault if he or she "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." 18 Pa.C.S.A. § 2701(a)(1). Bodily injury requires an "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301. "The Commonwealth need not establish that the victim actually suffered bodily injury; rather, it is sufficient to support a conviction if the Commonwealth establishes an attempt to inflict bodily injury. This intent may be shown by circumstances which reasonably suggest that a defendant intended to cause injury." *Commonwealth v. Richardson*, 636 A.2d 1195, 1196 (Pa. Super. 1994).

- 10 -

> To show an "attempt" to inflict bodily injury, it must be shown that the actor had a specific intent to cause bodily injury[.] A person acts intentionally with respect to a material element of an offense if "it is his conscious object to engage in conduct of that nature or to cause such a result." 18 Pa.C.S.A. § 302(b)(1)(i).

*Id.* (some internal citation, quotation marks, and brackets omitted).

Moreover, our Supreme Court has previously instructed that a defendant's use of force may be justified. Specifically,

> [t]he use of force against a person is justified when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person. *See* 18 Pa.C.S.[A.] § 505(a). When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt. . . . If there is any evidence that will support the claim, then the issue is properly before the fact[-]finder.

*Commonwealth v. Torres*, 766 A.2d 342, 345 (Pa. 2001) (some citations omitted).

In its Rule 1925 opinion, the trial court found that:

> Both [Martinez-Rivera]'s use of a metal pole to hit J.R. on the back of the head and [his] later kicking J.R. down the stairs would evince a finding that [Martinez-Rivera] acted with the intent to cause J.R. bodily injury. [W]e also find that in hitting J.R. on the head with a metal pole and kicking J.R. down the stairs, [Martinez-Rivera] acted, at least, with the requisite recklessness to support a conviction of simple assault[.]

Trial Court Opinion, 4/14/20, at 9.

Here, we agree with Martinez-Rivera that neither the tap with the metal pole, nor his kicking J.R. down the stairs, can form the basis of his conviction under subsection 2701(a)(1). Every witness who testified at trial referred to Martinez-Rivera's strike of J.R.'s head with the metal rod as a "tap." N.T.

Nonjury Trial, 1/14/20, at 13, 36, 47, 87, 104. The Commonwealth did not demonstrate that J.R. suffered "bodily injury," "impairment of physical condition" or "substantial pain." *See In Interest of J.L.*, *supra*;[12] 18 Pa.C.S.A. §§ 2701(a)(1), 2301. Moreover, we cannot infer from such a trifling touch that Martinez-Rivera's conscious object was to engage in conduct of that nature or to cause J.R. any such injury.[13] *See Richardson*, *supra*; 18 Pa.C.S.A. § 302(b)(1)(i). *See also In Interest of J.L.*, *supra*; *cf. Commonwealth v. Duck*, 171 A.3d 830, 837-38 (Pa. Super. 2017) (finding evidence of simple assault sufficient where victim suffered visible injury to head when defendant pushed him "really hard" or "slammed [him] to the floor" during verbal argument); *Commonwealth v. Wertelet*, 696 A.2d 206, 211 (Pa. Super. 1997) ("[P]hysical affronts that do not result in 'bodily injury,' and therefore do not constitute a simple assault, would likely be addressable under the summary offense of harassment which specifically includes conduct where the actor 'strikes, shoves, kicks or otherwise subjects him to physical contact.'").

---

[12] Although not J.R.'s parent or guardian, we agree that Martinez-Rivera was acting in *locus parentis* when he tapped J.R.'s head in rebuke for punching Aponte's pregnant stomach. *See* Appellant's Brief, at 43. Moreover, we note that Martinez-Rivera, the father of the child in Aponte's womb, *see* N.T. Nonjury Trial, 1/14/20, at 96, helped to clean around her house, *id.*, and that, although he was living at a nearby shelter, he had been visiting with Aponte at her house with her for almost one month. *Id.* at 10.

[13] Here, this universally testified to "tap," even when accepted in the light most favorable to the Commonwealth as verdict winner, *see Rahman*, *supra*, cannot support a **criminal assault** conviction. *See Wertelet*, *infra*; *see also Commonwealth v. Kirkwood*, 520 A.2d 451, 454 (Pa. Super. 1987).

Additionally, we agree with Martinez-Rivera that once Rodriguez placed him in a headlock, Martinez-Rivera was acting in self-defense, at least until Rodriguez and J.R. released him from the living room floor and retreated upstairs to gather their belongings.

In **Commonwealth v. Mouzon**, 53 A.3d 738 (Pa. 2012), our Supreme Court set forth the elements that must be present to establish a claim of self-defense: (1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use force against the victim to prevent such harm; (2) the defendant was free from fault in provoking the difficulty which culminated in the force used; and (3) the defendant did not violate any duty to retreat. **Id.** at 740. The Court additionally clarified that the Commonwealth may successfully disprove the defendant's self-defense claim by showing any one of the following: (1) that the defendant was not free from fault in provoking or continuing the difficulty; (2) that the defendant did not reasonably believe that he was in imminent danger of death or great bodily harm and that it was necessary to use force in order to save himself; or (3) that the defendant violated a duty to retreat or avoid the danger. **Id.** at 740-41.

Here, the Commonwealth never met its burden of disproving self-defense, **see Torres**, **supra**; therefore, we conclude that Martinez-Rivera's kicking J.R. down the stairs constituted such defense. Our review of the record reveals that J.R.'s announcement that he was taking the Xbox upstairs to his room in defiance of his mother's command, and his subsequent punch to his

mother's pregnant stomach, provoked the altercation on the stairs. Martinez-Rivera's tap—an act of parental rebuke, *see supra*, n.12—cannot be viewed as an instigation, continuation, or escalation of criminal violence. *See supra*, n.13; *see also Mouzon*, *supra* at 740; *In Interest of J.L.*, *supra*. Moreover, once placed in Rodriguez's headlock from behind, and attacked from the front by J.R., it was reasonable for Martinez-Rivera to believe that he was in imminent danger of great bodily harm and that it was necessary to use force to protect himself. *See Mouzon*, *supra*. Finally, we note that Martinez-Rivera's position within the confines of a stairwell flanked by the two six-foot tall, 150-pound brothers, as well as his position on the living room floor when the brothers remained on top of him, afforded him no opportunity to retreat or avoid danger, until the brothers disengaged from the physical fight. *Id.* at 740-41. Indeed, at trial, the Commonwealth conceded that the stairwell combat was mutual. *See* N.T. Nonjury Trial, 1/14/20, at 116 ("Your Honor, I would agree with [defense counsel] that with the sequence of events that occurred on the stairwell, there was clearly some type of altercation that, at the very least, [Rodriguez, J.R., and Martinez-Rivera] were, to some degree, **equally involved in this altercation**.") (emphasis added).

Nevertheless, we find additional evidence the Commonwealth adduced at trial was sufficient to sustain Martinez-Rivera's conviction under subsection 2701(a)(1) beyond a reasonable doubt. The Commonwealth proffered evidence that Martinez-Rivera pistol whipped J.R. on his left upper back in Rodriguez's room, after the brothers had retreated upstairs to gather their

belongings after the fight on the stairs. *See* N.T. Nonjury Trial, 1/14/20, at 16-17; 19. With the initial brawl having concluded, and Martinez-Rivera possessing a substituted choice of implement—a firearm is a heavier and more threatening object than a "little metal beam" or "stick"—Martinez-Rivera's intent to attempt to cause bodily injury or substantial pain could be inferred from his striking J.R.'s back with the pistol, especially where there was evidence adduced at trial that J.R. fell down onto the bed as a result of the strike and sustained an injury to that part of his body.[14] *See Richardson*, *supra*; *Rahman*, *supra*; 18 Pa.C.S.A. § 2701(a)(1). *See also Commonwealth v. Boettcher*, 459 A.2d 806, 808-09 (Pa. Super. 1983) (evidence sufficient to sustain simple assault, aggravated assault, and REAP where defendant pistol whipped victim in face, which required stitches to heal, smacked victim on side of neck and back of head, and fired gun into air three times).

Next, Martinez-Rivera challenges his REAP and simple assault convictions under subsection 2701(a)(3), citing to the *Bennett* principle. *See Commonwealth v. Bennett*, 303 A.2d 220, 221 (Pa. 1973) (finding evidence insufficient to sustain convictions where party having burden offers testimony which is so contradictory on essential issues that any finding by factfinder would be mere guess). Martinez-Rivera claims that all of his convictions which

---

[14] *See* N.T. Nonjury Trial, 1/14/20, at 31 ("Were you able to notice through your own senses, did [J.R.] have any injuries as a result of the altercation with [Martinez-Rivera]?" "Yeah, I think **he had a couple marks on his back** and on his face as well.") (emphasis added).

are founded on the fact that he possessed the gun must be reversed because "the only evidence" adduced at trial that Martinez-Rivera did so "arises from a single, interested witness's testimony that is 'incapable of reasonable reconciliation' with the rest of the evidence presented at trial." Appellant's Brief, at 50 (quoting **Commonwealth v. Farquharson**, 354 A.2d 545, 550 (Pa. 1976)). Martinez-Rivera argues

> the only evidence that the Commonwealth adduced in support of the fact that [Martinez-Rivera] had a gun with which he assulted and endangered [Rodriguez and J.R.,] came in the form of [Rodriguez]'s testimony. . . . [Rodriguez] was a party to the quarrel, and in every other imaginable way directly and personally interested in the disposition of the present case. And [Rodriguez's] testimony was incoherent, contradicted by all other objective evidence, riddled with materially significant internal inconsistencies, and sometimes demonstrably mendacious, all so as to render it unreliable or at the very least useless as a matter of law.

Appellant's Brief, at 51. We disagree.

Under subsection 2701(a)(3), a person is guilty of simple assault if he "attempts by physical menace to put another in fear of imminent serious bodily injury." 18 Pa.C.S.A. § 2701(a)(3). "Serious bodily injury" is defined as that "which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. "The elements which must be proven are intentionally placing another in fear of imminent serious bodily injury through the use of menacing or frightening activity. Intent can be proven by circumstantial evidence and may be inferred from the defendant's

conduct under the attendant circumstances." ***Commonwealth v. Reynolds***, 835 A.2d 720, 726 (Pa. Super. 2003) (citing ***Commonwealth v. Little***, 614 A.2d 1146, 1151 (Pa. Super. 1992)) (citations omitted).

"A person commits the crime of [REAP] if he engages in conduct which places or may place another person in danger of death or serious bodily injury." ***Commonwealth v. Hopkins***, 747 A.2d 910, 915 (Pa. Super. 2000). "The *mens rea* for [REAP] is 'a conscious disregard of a known risk of death or great bodily harm to another person.'" ***Id.*** at 916 (citing ***Commonwealth v. Peer***, 684 A.2d 1077, 1080 (Pa. Super. 1996)).

Here, Rodriguez testified that Martinez-Rivera possessed a gun, used it to pistol whip J.R. in the back, flailed the firearm at both himself and J.R., pointed it at them while making threatening statements, and fired a shot into the closet while J.R. was "in the line of fire." ***See*** N.T. Nonjury Trial, 1/14/20, at 16-23. Moreover, Rodriguez testified that during the confrontation with the firearm, he and Martinez-Rivera essentially wrestled over possession of the weapon when Rodriguez grabbed it and "reverse[d] it" on Martinez-Rivera. ***Id.*** at 21-22. We note that this evidence was sufficient to sustain each of the challenged convictions under sections 2701(a)(3) and 2705. ***See Reynolds***, ***supra*** at 727 (finding evidence sufficient to sustain conviction for simple assault pursuant to subsection 2701(a)(3) where defendant pointed gun at victims and threatened their lives); ***Commonwealth v. Matthews***, 870 A.2d 924, 929 (Pa. Super. 2005) ("[I]n instances where the defendant draws a weapon, threatens to use it on the victim[,] and is prevented from doing so

by the physical intervention of another actor, we have found that the Commonwealth presented sufficient evidence to demonstrate that the appellant took a substantial step, with the required specific intent, to perpetrate a serious bodily injury upon another.");[15] **Hopkins**, **supra** at 915-16 (holding evidence sufficient to sustain REAP where defendant waived loaded and operable gun at victim and pistol whipped victim); **In re Maloney**, 636 A.2d 671, 674-75 (Pa. Super. 1994) (concluding evidence sufficient to sustain REAP convictions where Commonwealth proffers evidence that defendant pointed loaded weapon at victim).

Additionally, we note that, generally, the testimony of the victim identifying the defendant as the perpetrator of the crime, alone, is sufficient to sustain a conviction. **See Commonwealth v. Johnson**, 180 A.3d 474, 478 (Pa. Super. 2018) ("A victim's in-court testimony, identifying the defendant as the perpetrator of a crime, is[,] by itself[,] sufficient to establish the identity element of that crime."); **see also Commonwealth v. Reed**, 216 A.3d 1114, 1119 (Pa. Super. 2019) ("[T]he finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence."). Inasmuch as Martinez-

---

[15] We note that it was reasonable for the court to infer that Martinez-Rivera intended to inflict serious bodily injury under these circumstances because "the crucial factor is not how much time the attacker wastes in cruelly terrorizing his victim, but whether he was stopped short of the objective [signaled] by his words or conduct." **Commonwealth v. Elrod**, 572 A.2d 1229, 1232 (Pa. Super. 1990).

Rivera cites to the **Bennett** decision and its progeny for the proposition that a single witness's testimony may not be sufficient to sustain convictions where that witness's trial testimony was contradictory and would lead to jury surmise, we find those cases distinguishable from the facts *sub judice*.

In **Bennett**, the defendant was convicted based solely upon the testimony of her co-defendant, who was the actual perpetrator of the crime involving a stolen vehicle. **Bennett**, *supra* at 220-21. The co-defendant in Bennett had contradicted himself in police statements multiple times and only acquiesced to Bennett's involvement to benefit himself. **Id.** The **Bennett** Court found that this sole witness's testimony would only allow the jury to arrive at a conviction based on mere conjecture.

Here, the Commonwealth's case was not limited solely to Rodriguez's testimony; it also consisted of other circumstantial evidence. Police observed broken furniture in Rodriguez's bedroom, which corroborated that a physical struggle occurred in the room. Police also recovered a bullet fragment in the closet frame and observed a bullet hole in the closet door, which corroborated Rodriguez's testimony about Martinez-Rivera's position in the room when he fired the weapon. Police also recovered the brass bullet casing from Rodriguez, and observed the wet spackle, which evidenced the recency of the event and further corroborated Rodriguez's testimony. Finally, all of Rodriguez's testimony, aside from his observation of Martinez-Rivera possessing the firearm, was corroborated by the personal-knowledge testimony of the other witnesses at trial. Indeed, both J.R.—a younger sibling

with the same initials, who observed the altercation on the stairs from the living room—and Aponte confirmed that an altercation occurred on the stairs as a result of Martinez-Rivera's tap to J.R.'s head with the metal rod; the three males fell down the stairs during the altercation; they continued to fight in the living room before Aponte ordered her sons out of her house; and the sons proceeded back upstairs to gather their belongings before riding an Uber to a friend's house. Additionally, Rodriguez's testimony lacked the type of self-serving characteristics that were at issue in the *Bennett* case: he testified that Martinez-Rivera merely tapped J.R., but that he himself retaliated by placing Martinez-Rivera in a headlock or chokehold. Moreover, Rodriguez did not immediately report the matter to police, but recounted the facts to his aunt and uncle first before they then proceeded to alert authorities. As a result of the above, we find the *Bennett* principle is inapplicable to this case and deem this issue to be meritless.

Next, Martinez-Rivera challenges the discretionary aspects of his sentence. The right to challenge the discretionary aspects of one's sentence requires that the jurisdiction of this Court be properly invoked. We evaluate whether we have jurisdiction over the discretionary claim via the following four-part test:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, *see* Pa.R.A.P. 2119(f); and (4) whether there is a question that the sentence appealed from is not appropriate under the Sentencing Code. The determination of whether a particular

issue raises a substantial question is to be evaluated on a case-by-case basis. Generally, however, in order to establish a substantial question, the appellant must show actions by the sentencing court inconsistent with the Sentencing Code or contrary to the fundamental norms underlying the sentencing process.

***Commonwealth v. Dunphy***, 20 A.3d 1215, 1220-21 (Pa. Super. 2011) (some internal citations, quotations marks, and footnotes omitted).

Here, Martinez-Rivera filed a post-sentence motion for reconsideration of his sentence, followed by a timely notice of appeal. He has also included in his brief a Rule 2119(f) statement. ***See*** Appellant's Brief, at 31-32. Therefore, we must determine whether Martinez-Rivera raises a substantial question. ***See Dunphy***, ***supra***.

We examine whether the appellant has raised a substantial question on a case-by-case basis. ***Commonwealth v. Paul***, 925 A.2d 825, 828 (Pa. Super. 2007). "We cannot look beyond the statement of questions presented and the prefatory Rule 2119(f) statement to determine whether a substantial question exists." ***Commonwealth v. Radecki***, 180 A.3d 441, 468 (Pa. Super. 2018) (brackets omitted).

In his Rule 2119(f) statement, Martinez-Rivera states that "the court failed to consider mitigating factors, the rehabilitative needs of [Martinez-Rivera,] as well as protection of the public, gravity of the offense, and the impact on the life of [J.R. and Rodriguez] and the community." Appellant's Brief, at 32. Martinez-Rivera relies on our decision in ***Commonwealth v. Felmlee***, 828 A.2d 1105 (Pa. Super. 2003), for the proposition that "[i]t is well-established that a sentencing court's failure to consider mitigating factors

raises a substantial question."  Appellant's Brief, at 32.  We note that the *Felmlee* decision contains no such language.  Indeed, in *Felmlee*, the appellant raised in his Rule 2119(f) statement the additional attendant circumstance that he was sentenced in the aggravated range of the sentencing guidelines.  *See Felmlee*, *supra* at 1107 ("[A] claim that the court erred by imposing **an aggravated range sentence** without consideration of mitigating circumstances raises a substantial question.") (emphasis added); *compare Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010) (citing *Commonwealth v. McNabb*, 819 A.2d 54, 57 (Pa. Super. 2003)) ("An allegation that the sentencing court failed to consider certain mitigating factors generally does not necessarily raise a substantial question.").

Here, Martinez-Rivera has failed to state in his Rule 2119(f) statement that he was sentenced in the aggravated range.  *See Felmlee*, *supra* at 1107.  As such, his claim fails to raise a substantial question.  *See Moury*, *supra*; *see also Commonwealth v. Bromley*, 862 A.2d 598, 604 (Pa. Super. 2004) ("In order to raise a substantial claim [that the sentence within the guidelines was manifestly excessive], Appellant's 2119(f) statement must sufficiently articulate 'the manner in which the sentence violates either a specific provision of the sentencing scheme set for forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process.'")

(citation omitted). Therefore, we have no jurisdiction to hear Martinez-Rivera's discretionary aspects of sentence claim.[16] **See Dunphy**, **supra**.

Finally, Martinez-Rivera challenges the legality of his sentence for his conviction pursuant to section 6105. Generally, "claims pertaining to the legality of sentence are non-waivable, [and] may be leveled for the first time on appeal[.]" **Commonwealth v. Foster**, 960 A.2d 160, 163 (Pa. Super. 2018). Martinez-Rivera did not raise this issue in the trial court, but instead, raises this issue for the first time on appeal.

Our review of Martinez-Rivera's claim reveals that, rather than a challenge to legality of sentence, it is better characterized as a challenge to the constitutionality of section 6105. **See** Appellant's Brief, at 74 ("[Section 6105] is not only constitutionally vague in the sense that it fails to give fair and clear notice of its meaning to the public[, but] it would strike most linguists and logicians as indecipherable."). Constitutional void-for-vagueness claims must be preserved in the trial court and may not be raised for the first

_____

[16] Moreover, we note that, despite his claims to the contrary, the court did consider Martinez-Rivera's mitigating factors and rehabilitative needs, as well as the protection of the public, gravity of the offense, and the impact on the life of the victims and the community. **See** N.T. Sentencing Hearing, 2/18/20, at 8 ("I've taken into account the evidence in this case, having been the trial judge [] as well as the finder of fact. I've reviewed the [presentence investigative report.]"); **see also Commonwealth v. Devers**, 546 A.2d 12, 18 (Pa. 1988) ("Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself."). Finally, our independent review of the record reveals no indication that Martinez-Rivera was sentenced in the aggravated range.

time on appeal. *See Commonwealth v. Rouse*, 191 A.3d 1, 5-6 (Pa. Super. 2018) (holding phrase "illegal sentence" is term of art applicable to three types of claims and which does not include void-for-vagueness claims, which would be better characterized as challenges to legislature's ostensible failure to provide adequate notice of penalty); *Commonwealth v. Elrod*, 572 A.2d 1229, 1232 (Pa. Super. 1990) (party who fails to assert claim that terms of sentence were unconstitutional in trial court waives right to pursue that claim on appeal where sentencing judge was legislatively authorized to impose given sentence). Therefore, this issue is waived.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/16/2021